PARTNERS v. HANGARTERS v. ROGERS v. HANGARTERS v. HANGARTERS The difficulty of the facts, irrespective of whether one ultimately concludes its claim or issue conclusion or neither of the above, it seems to me that one ought to have one of two choices. Either the accused product, this vow, was infringing on the 114, which is what you allege now, or it wasn't infringing on the 114 because it came under paragraph 11 of the agreement. It seems to me you can't have it both ways. Your theory with which you proceeded and won $26 million, or at least ultimately got $26 million, was predicated on this not being an infringing product. If it had been infringing, if it had been covered by the 114, or if you had alleged it had, you wouldn't have been able to proceed in your trade secret litigation. So I'm really having a hard time figuring out what your argument is. Your Honor, I understand what you're saying. And I've been concerned about this issue because it appears to have sort of infiltrated the case. And it's fundamentally incorrect. The case below did not depend on the application of section 11 of the license agreement, which was a right of first refusal, triggered when and if the device that was actually developed did not infringe the 114 patent and performed a similar function. And what actually happened, Your Honor, was that- Wait, I don't understand. If it had been under, if you had alleged that it was under the 114 patent, then none of your allegations would have been substantiated. I mean, this was a license agreement for the 114. No, the lawsuit, Your Honor, was for misappropriation of trade secrets based on events that happened during the course of that license agreement. But it did not rely on the terms of that license agreement other than, it was essentially background, Your Honor. What happened is, and maybe it helps to go back through the facts slightly, Mr. Rogers and Mr. Zimmer developed, conceived the idea that became the 114 patent. And it has to do with, essentially, the door into one of these valve ports. They came up with an idea that you could have a plunger that could be used so that when you inserted a syringe into the valve port, it would depress the plunger and that would allow fluid to flow into the valve. It solved one problem for needle-free valves. It didn't solve them all, but one tough one is how you get in that door and then it reseals so you can use it again and again and again. That's the 114 patent. It was issued in 1991. Mr. Rogers and Mr. Zimmer then licensed it to Braun to commercialize a valve that they anticipated would use that entry concept. Braun dragged its feet. Nothing was happening. So Zimmer and Rogers went out and they hired an engineering firm to help them out. Let's get this process going. VIR Engineering was hired. And they came up with five phase one concepts for how to manage the process once you are through the door. Use the plunger, but then once that fluid gets into the valve, how do you get it through the valve without getting air bubbles, without getting back pressure, without having other problems that mess up the whole valve? That's what VIR did. They came up with five concepts, which Rogers then presented to Braun and said, okay, if you're not going to do it, we're going to do it. And Braun said, okay, this is all kind of interesting. Let's pursue in phase two together certain of these concepts, two of these concepts. Let's develop them and see if we can get a product out of this. VIR Engineering went back to work. And they came up with a conceptual design that used one of those five concepts. Braun then came to Rogers who kept saying, where are we going? Is this going to be a product? And said, you know what? Sorry, we've decided to go a different path. We're going to develop something that doesn't infringe the 114, doesn't do the 114, we're going to do something else entirely. And without Rogers knowing, they then got the VIR engineers to sign assignments of their invention, and they went out and they acquired the 451 patent, which does not relate to the same function in the valve as the 114. It manages the flow of the fluids through the valve. Once they're past that piston, that is the entry. Different function, different concept, different inventors. 451 patent developed entirely differently, totally unrelated to the 114 patent. A valve that's produced could either practice the 114 patent or not. It could either practice the 451 patent or not. The two are not exclusive. So there's a question with the valve that comes out, the ultracite valve. Two separate questions. Does it practice the 114 patent? Well, at the time this all happened, Mr. Rogers and Mr. Zimmer didn't have money to hire a patent firm to go pursue a patent infringement claim, even to do the analysis. They had to go another path. They followed the path. They found out that Braun had acquired this 451 patent behind their backs without them knowing, using their trade secrets, and they hired a contingency firm. Fair enough. I guess I still – we've all read the briefs, and so we all kind of appreciate the whole background of this. But looking at your complaint, and your third cause of action for fraud, I'm assuming some of this is confidential. I'm assuming you'll tell me if this is confidential. This is not confidential, Your Honor. Are you referring to the Second Amendment complaint? It's at A125 of the appendix. Okay. It says at paragraph 36, it says, at the same time Braun was misrepresenting that the development project was proceeding in furtherance of the intent of the exclusive license agreement. That was with regard to the 114. They knowingly and intentionally concealed that they were using VRR engineers in an attempt to develop a valve that would not be royalty-bearing under the 114 exclusive license agreement. Isn't that pretty compelling here? I mean, your allegation was that, no, no, no, no, they were pretending this was under the 114 patent, the whole agreement, but this was really under paragraph 11, which is the exclusion for things that aren't covered by the 114 patent. Why isn't that and other things on the record, certainly, sufficient for us to conclude that your original claim was predicated on a theory that, no, this valve wasn't infringing on the 114, the misrepresentation and the fraud or whatever stemmed from paragraph 11? Because, Your Honor, this is part of a fairly complicated fraud allegation, which refers to specifically the misrepresentation being made by Braun at the time. It does not take a position as to whether, in fact, that valve did or didn't infringe the 114 patent. It had to do with what Braun was telling Rogers and Zimmerman in order to essentially put them off. Braun was saying, we're not doing the 114 patent.  And that's what they did. So what did you already get compensated for? What are your damages? You got future damages in the other case. For what? For trade secrets misappropriation only. The jury verdict for me. With regard to what? Relevant to the valve. And the question is, it's just confusing to me to try to parse whether or not it was a 114 infringement case. How, having alleged that it wasn't part of the royalty agreement, you can now come back and get, it seems to me, like a double recovery. And, Your Honor, if I may, can I address that whole double recovery issue? It's clearly a difficult issue to sort of sort out. And if I may, I'd like to just kind of walk through what happened, and not in the same way as in the brief. Because I think the briefs have the dots, but they don't really connect them. And maybe here today I can help connect those dots to make this a little more clear. In the district court, as I said, there was a trade secrets misappropriation claim. And that related specifically to trade secrets developed by VIR Engineering during the course of that work on Phase 1 and Phase 2. So this was trade secrets that were developed long after the issuance of the 114 patent. They had nothing to do with the 114 patent. Separate group of conception invention work. Those trade secrets had to do with the flow through the valve. And those trade secrets were the basis for the 451 application. Now, as you noted, in the fraud allegations, the plaintiffs alleged that there was a misrepresentation by Braun, essentially to put them off, to say, we're not doing 114 patent. Go on your merry way. Don't mind us. And they relied on that. And in reliance on that, they ended up terminating the license agreement, ultimately, and taking other steps. But the point is, what happened in terms of the recovery at trial is that the jury found that there was a blatant, willful, intentional misappropriation of trade secrets. And for that misappropriation of trade secrets, which was those VIR trade secrets, it awarded $16 million in past damages plus $2.5 million in future damages. What's missing, the dot that you're not connecting for me, is that all of this is about one accused product, right? It is. It's the same. So you're telling us that the whole trade secret and all the money and all the past and future damages you got was with regard to the same product that you're now suing over as the accused device that infringes the 114? That's correct. It is the same device. But it has different features of that device. And it's not a situation... Your Honor, there are other cases that are not referenced in here, but Catalina Lighting is a case... Why couldn't you have brought an infringement action at the same time for 114? There's no reason that it could not have been brought at the time. It could have been brought. If the analysis had been done and if there was a grounds for it. So you failed to make the analysis. That's correct. You waive your rights to bring it at that point because if the ultra-site infringes 114, you should have brought it at that time. No, Your Honor, it's not a compulsory claim. And this is critical. This is something that's embodied in these cases, the Currens case and the other cases talking about this distinct patent right. There is no duty where there's a single product to assert every single patent you hold that might read on that patent in a single action. Even if you're right with respect to that and with respect to claim preclusion, isn't there a problem with issue preclusion? No, Your Honor, there's not. Because the issue of infringement of the 114 patent undisputedly was never dealt with in the court. There was never a piece of evidence. There was not a single piece of evidence taken on the issue of infringement of the 114 patent. There was no claim construction of the 114 patent. There was no expert testimony. There was nothing. This patent did not arise. But wasn't it implicit in the case that you brought that this was not covered by the 114 patent? And again, it... Which would mean that there would be no necessity for a Markman hearing or a typical infringement analysis. In effect, that was a given. It wasn't a given, though, because in fact, during the course of discovery, and this can be seen in the colloquy that's referenced in the appendix, with the court in August of 2004, during discovery in this case, Braun sought discovery on the issue of infringement of the 114 patent. And the plaintiffs refused that discovery. It went before the court, and the plaintiffs said the infringement of the 114 patent is not at issue in this case. And ultimately, no discovery was taken on the 114 patent. The interrogatories on that question were objected to and never responded to. And so we go from 1998 all the way up to 2004. And at that point, the jury has made its finding, and it's awarded damages solely for trade secrets and infringement. And I think it's critical to understand the evidence on damages for trade secrets infringement offered by Braun were based on the future... alleged future sales, which, by the way, were that the product was going to be off the market in three years, which it never, obviously, wasn't going to be, and it's now... Can I ask you... Your answer to one of my questions before was that that was about... The whole trade secrets was about one feature of this accused device, and the 114 infringement allegation is about another feature. Can you... I'm sorry, a separate feature, yes. Separate feature. Can you show me, point to what in the record tells us that, including that the calculation of damages was predicated exclusively on this particular feature of the device? Well, I can point to the two patents. If the court looks at the two patent claims, the 114 patent and the 451 patent, they claim different features of a valve, and those claims are directed to different aspects of a valve, and they're not incompatible. There's nothing about... Answer me about the product. The product itself? Point to me the complaint to something in the damages award where they were calculating damages. This is in the original case where they said, this is only about this particular feature. There's only one product at issue, isn't there? That's correct. There's one product at issue. The testimony of Bronze Expert, which I'll have to find the reference, Your Honor, but in the record we've included testimony of Bronze Expert, and it's quoted in our reply brief, I believe, that Bronze Expert, in discussing its calculation of damages, indicated and clarified that those damages related specifically to the royalty that would be accrued based on the trade secrets that gave rise to the 451 patent would not include other features of the device and in fact applied a discount to that royalty rate to reflect the fact that there could be other features that it doesn't cover. Yeah, but where's the reference to the feature? Well, it didn't go into what the rest of those features were. Well, how are we supposed to know here then not that we wouldn't take you at your word, but what is to support your telling us that the 114 infringement allegation is about a feature in the accused products that's separate and distinct from the trade secret allegations? I'm just looking for some confirmation in the record. Your Honor, I think because the 114 was never discussed in the underlying case, it's a little bit hard to go to a record and say there was a distinction. No, I don't need them to name the 114. I want them to talk about the feature. I want them to tell me what feature in this accused device, this particular feature, the handle was what we were talking about in paragraph 11 that wasn't part of it and the nozzle is the one. I mean, I don't need the 114 to be listed. I want to talk about what the actual feature was upon which the damages were predicated. Well, Your Honor, I think the only evidence that's in the record on appeal in this case is the 451 patent. There's very limited trial testimony in this. We have trial testimony from the underlying case, but that issue we didn't foresee that we'd be looking back into the expert witness trial testimony or the technical expert reports. Well, don't you think it's relevant? I mean, it seems to me that your case may rest or not on whether or not you're talking about a different feature in the accused product in this 114 patent infringement case, a feature other than the one that was an issue in the trade secret case. Do you not think that's a relevant question? It is a relevant question, yes, but we thought that the distinct nature of the two patents was sufficient evidence to explain the fact that these are different patents on different features because even comparing the claims, I mean, the 451 patent was issued over a reference to the 114 patent, and it claims the distinct aspects of it. If we can compare the claims, the claims relate to the flow of the fluid down the structures that provide for flow of the fluid down past the piston. Did I hear you correctly to say that you refused to allow discovery on the 114 patent during the proceedings? Not me personally. I wasn't involved in the lower case, but yes, during the lower case, discovery was requested by the plaintiff on the 114 patent, and it was declined, and it was put before the court. The court refused it. That's correct. That is correct. On what basis? On the basis of relevance because the 114 patent infringement was not an issue in the case. So it was not an issue in the case. It could have been an issue in the case. You could have brought an action at that particular point alleging that the ultravise was infringing the 114 patent. That's correct. You did not. That is correct, and it's our position. Why aren't you precluded now from bringing this particular action? Because that was not a compulsory claim to be brought with the case that was filed, and again, this case was filed as counterclaims to bronze action, declaratory judgment action regarding ownership of the 4501 patent. The counterclaims that were brought involved that same nucleus of facts, ownership of the 451 patent and the underlying trade secrets. It was not a compulsory claim for the plaintiffs to bring at that point claims relating to an unrelated patent. Does it have to be compulsory at that point if it's the same product that you're alleging is now being infringed by 114? The case law does not indicate that it needs to be compulsory as long as that claim is not litigated in the case because the cases such as the General Motors v. Kearns case. But the issue was litigated. I'm sorry, excuse me. The issue was litigated, was it not? Which issue? As to whether or not the coverage could have been brought at that point as to whether 114 covered the ultrawide. I'm sorry, I'm losing the track, but yes. The 114 patent infringement issue could have been raised at the time of the prior action, but it was not, but at the same token as our position, and this is supported by the law we cited in these briefs, that it was not compulsory to bring that claim at the time. And in fact, that this is done regularly and it's a strategic decision often made by parties who have multiple patents that may re-ideal on a single device to assert certain patents and not assert others. And in fact, the underlying case wasn't even an infringement case. It was about ownership of the 451 patent and ownership of the trade secrets. Well, Mr. Enghardt, we'll restore one minute of your rebuttal time. Let's listen from the other side. Mr. O'Quinn. Thank you, Judge Garrison. May it please the court, John O'Quinn for B. Braun Medical. Judge Prost, I think the questions that you were asking get at what the heart of the prior case was about and the intersection between it and the current case, namely that SLR had a choice on what theories to pursue. They could have pursued theories that the valve that had been developed was an infringing valve and that there had been a breach of the 114 license agreement. Well, is he correct about there being completely different aspects of this accused device that are at issue with trade secrets and now at issue in the infringement case? I don't think so at all, Judge Prost. Both patents are patents that are directed towards a valve that uses a piston to regulate fluid flow. That's what they're both directed towards. They are directed to different aspects of that valve, are they not? Well, Judge Lynn, obviously it was a finding by the PTO of separate patentability, but I don't know that it's fair to say that they're directed towards different aspects, but even if they are, I don't think that's relevant either to claim preclusion or to issue preclusion or to the party's release because the core theory with respect to claim preclusion is that these all arise from the relationship under the 114 license agreement and they had a choice when they brought their claims. They could have pursued a theory of infringement. They could have pursued a theory that this was an improvement and under Section 2 of the 114 license agreement, Braun did have a license to any improvements whether they were patented or not. He didn't choose that theory. Very clearly, very explicitly in the complaint, in the counterclaim complaint that was brought by SLR, they pursued a theory that it was not an infringing device, that the trade secrets were disclosed pursuant to paragraph 11 and that the device was... Isn't that issue preclusion and not claim preclusion? Well, Judge Proust, I think it's certainly issue preclusion. I think it is relevant to the issue of claim preclusion because here the question with respect to claim preclusion are what are the overlapping facts that make this a convenient trial unit, that make this a single case or a single cause of action for claim preclusion purposes and I think those facts are that they both arise from the relationship under the 114 patent license and that's a license in which rights and duties are defined with respect to whether or not something infringed the 114 patent. So the 114 patent was involved in, it may not have been at the forefront, but it was certainly foundational to the prior case such that the district court in the prior case ultimately concluded in crafting an equitable remedy that the 114 patent should be included with that and there's a colloquy with the district court in the prior case that's referenced in SLR's reply brief to sort of suggest that sometime after the case was done in 2004 was the first time that the 114 patent came up in the case. That's simply not true. It was exhibit A to the counterclaims and was integral to the counterclaims in defining what the rights and duties of each party were under the 114 license and when the district court in 2004 said, well that hasn't occurred to me, what he's saying hasn't occurred to him is the idea that having prevailed on theories that were fundamentally inconsistent with the notion of infringement under the 114 patent that SLR could then turn around and assert a claim of patent infringement and if you look at JA 223 and 224 you see that discussion played out and the district court was actually somewhat incredulous. He said, quote, it reminds me of the guy who murdered in cold blood both of his parents and then threw himself on the mercy of the court because he was an orphan, end quote, in reacting to their argument and that's because throughout the course of the prior case the predicate to the claims were that this was non-infringing valve. You see that in the conclusions that are drawn by the district court in the post-trial decision by the district court in the original case in which he looks at the fraud claim and says, yeah, they have shown that there was fraud namely that they misrepresented that they were developing a valve that was royalty bearing that infringed the 114 patent when in fact they were not. That was the theory on which SLR proceeded. That was the theory in which SLR's counsel made closing argument saying that the inventors had been deprived of the opportunity to see their invention come to fruition because they had been misled that infringing device was being developed when in fact it wasn't. That's also integral to the trade secrets claim because again the notion on the trade secrets claim was that these were trade secrets that were disclosed pursuant to paragraph 11 which only applied to non-infringing devices. So as a result you both have a claim of issue preclusion here that the district court did not reach as well as claim preclusion because it does involve the same relationship. It involves exactly the same device. Both cases seek the same relief namely an injunction of the manufacturing and sale of the ultracite valve. Both would involve evidence of how the ultracite valve was developed the course of conduct between the parties and both would involve much the same evidence as to damages. Judge Prost you had asked a question with respect to damages. I don't know how you could ever segregate out the trade secrets from whatever SLR is now saying is different when their own briefing in the original case concedes that the royalty that they received for past damages was 70 to 100 percent of B. Braun's prior sales. So there's no reasonable royalty that can be tacked on on top of that. It was 100 percent of the prior sales. And I think that is... And that amount didn't differentiate between because of this feature. No there was no... One feature versus another feature. No in fact the whole theory on which the case was litigated the original case was litigated was that these trade secrets became the 451 patent and those are synonymous with the ultracite valve. The trade secrets equal patent equals ultracite valve and SLR owns all of it. And there was no distinction between one feature versus another feature and again there's a reason that they wouldn't have litigated the case that way because if they had conceded that the valve was simply an improvement that infringed the 114 patent then Braun had a license to it under paragraph 2 of the agreement. Now the agreement was subsequently terminated after the... That was terminated right after the ultravisors had been shown to them. That's exactly right Judge Garisak. So what impact does the release language have on all of this? If any. I think the release does directly speak to this Judge Garisak because the release it could have been a release that just says we release all of the claims that have been brought and the counter claims that have been brought in this case. It doesn't. It's a much broader release than that. It says R&R or SLR for present purposes and B. Braun hereby mutually release and discharge each other from any and all claims whether or not now known anticipated, suspected which obviously you wouldn't include that language if you meant to limit yourself to the claims that had actually been asserted. And then it does limit this by saying with respect to the matters alleged in the litigation. Now the matters alleged in the litigation is broader than simply the claims or counter claims that had been asserted because again if that's all that it meant to be that's what it would have said. Matters alleged clearly would include a claim of infringement under the 114 patent. For one thing again the 114 patent was exhibit A. I don't know how you can say it's not at least a matter alleged in the prior case when it's exhibit A to the prior case. There are allegations relating to the 114 patent. There was litigation over what the 114 there was litigation over what the 114's patent license covered and so you have discussions by the district court in the prior case differentiating between covered products and not covered products. Explaining the difference in the regime between paragraph where paragraph 11 applies and where it doesn't apply. And I would also point to What was the rationale for not allowing discovery on the 114 patent in the prior litigation? Well I think the position they took was that the 114 patent wasn't at issue because they weren't affirmatively asserting it. We certainly weren't taking the position that we infringed the 114 patent and indeed the predicate to their claims and there was to finish up the answer to your other question Judge Geyer said there's a specific allegation in Braun's D.J. action that says Braun does not infringe the 114 patent. That's in paragraph 17 and 18 at J.A. 53. And so we weren't arguing that we infringed the 114 patent. They were not arguing that we infringed the 114 patent. Instead they were asserting claims that were predicated on non-infringement and so when there was some discovery that was propounded that asked what products of B. Braun's do you assert infringe the 114 they objected to it as being irrelevant. The issue never got that issue never got litigated in any detail as far as I know before the district court and then you have after the district court has made findings of fact and conclusions of law that specifically walk through the 114 patent license and specifically walk through the distinction therefore between whether or not something was infringing or non-infringing whether it was not covered by paragraph 11 or covered by paragraph 11 two months later you have the colloquy in which SLR suggests well we'd like to to preserve the ability to litigate over the 114 patent in the future and the district court was was incredulous about it and made the point quote we're not here to plant the seeds for the next big litigation and again going to the issue of claim preclusion the fact that the district court in the prior case took it upon itself to include the 114 patent in the equitable remedy that he crafted I know that remedy was ultimately vacated we sought its vacature on for other reasons but the fact that the district court included the 114 in crafting his equitable remedy is proof positive that these are claims that could and should have been brought together for claim preclusion purposes is it your position that if if a party is asserting patent infringement against this the manufacture use and sale of a particular product that that party is obligated to assert every patent that might be infringed by the sale of that product Judge Lynn while I think that would be a very sensible rule of law this case does not present that issue to this court because this isn't a case about the assertion of patent A in case 1 patent B in case 2 patent C in case 3 this is a case in which case 1 is about a license agreement about 2 patent A which is in which rights and duties are defined with reference to whether or not something is an act of infringement under patent A in case 2 which is then an assertion of patent A so I think it would be as I said at the outset you have to agree with me that the case of infringement per se was not litigated with respect to the 114 patent there was no claim construction there was no application of the claims etc. Absolutely Judge Lynn they did not assert that the ultraside valve infringed the 114 patent and if they had it would have been a very very different case in terms of the way that they litigated their trade secrets case the way that they litigated their fraud case and the damages that they were ultimately entitled to I mean this was a quote strategic decision and it was a strategic decision to take themselves outside the world of the license and so that they would not be limited in the damages that they could recover to the kinds of royalty that they would have been entitled to under the license it would be fundamentally unfair to be broad whether you call it claim preclusion issue preclusion or just simply the application of the release to say well having advanced a theory successfully before the jury resulting in a substantial verdict and ultimately a settlement for 26 million that they could turn around and pursue the other theory because if that were the law and if that were permissible to put it this way if they had to bring their infringement claim at the same time they could not have argued to the jury you have defrauded us by representing that you were developing an infringing vow a royalty bearing vow when you were not he couldn't have brought that case and he couldn't have asserted well you've taken things that were disclosed pursuant to paragraph 11 which only applies to non-infringing devices and done something that you should not have done because we actually would have had the right to do everything that we did at least through the termination of the license under paragraph 2 so I agree that the patent infringement wasn't asserted but that doesn't mean that claim preclusion doesn't apply what's your view of the Kearns case and the relevance or lack thereof to this case well I think first and foremost Kearns is not relevant because it does involve the case of the assertion of patent A then patent B then patent C and that's just not what you have here you have here a very narrow issue where the relationship and the issues all ultimately stem to the 114 license and the 114 patent which defined rights and duties under that license I also think that you only of course get to applying the Kearns case if you decide that you're applying federal circuit law as opposed to ninth circuit law that's an issue that was waived below they did not make a choice of law argument and also I think creates some jurisdictional issues as well because of the notice of appeal being only addressed to the motion to dismiss but on that point if you will go ahead and finish your answer and I think I know where you're going but let me if I may finish this with respect to the Kearns case at the end of the day if the court does decide that Kearns is applicable here Kearns itself turns on the procedural nature of the dismissal that's integral to the holding in Kearns and Kearns seems I mean I think Kearns actually supports the notion that you can't bring A then B then C because if that were the background rule the court would not have needed to focus on the rule 41 dismissal and the procedural nature of the dismissal the reason that the court found that there was something improper about the destruction of property rights in that case was because it was a procedural dismissal in the prior case that had not allowed a full and fair opportunity to litigate whether or not somebody took up that opportunity so I think Kearns is eminently distinguishable and Judge Prost with respect to the jurisdictional issue you can't be suggesting can you that if let's assume the regional circuit law was applied below and let's assume it's at least arguable that it would have been the difference between that and existing federal circuit law would have been outcome determinative and the case comes up here and we if we can conclude that federal circuit law actually applies and not regional circuit law that if the party had raised that we wouldn't be able to adjudicate the law just the case under the correct law Judge Prost waiver is a discretionary doctrine the court can always choose in its discretion not to apply waiver doctrine I'm my argument is they did not make a choice of law argument and it's not good policy to encourage what in this case would be a second bite at the apple a second time where you encourage parties to game the system let's litigate it under one set of law one theory if that doesn't work we'll turn around and litigate it under a different law so I'm not saying that the court couldn't ever reach the issue of what law applies I'm just saying that with respect to the the court's prudential and prudential decision of whether or not to enforce waiver and its discretion of whether or not to enforce waiver it's appropriate here to enforce waiver Mr. Quinn thank you very much thank you your honor you have one minute rebuttal excuse me your honor you have one minute rebuttal if you need it I do your honor your honor just briefly this damages analysis question is really troubling because it's being twisted around in a certain way and I think it was confused by the district court the underlying case damages were awarded and again I will direct the court to page 30 of appellant's opening brief where this is discussed and there's reference to testimony of bronze expert Alan Gooday regarding his calculation of damages but specifically the jury instructions and the jury verdict form and the testimony provided all pointed to an allocation of damages specifically to the trade secrets relating to the development work done by VIR and carving out reference to other items so again there's no double dipping the past damages were based on lost profits those can't be touched they were lost profits and under the Catalina case we can't dip again into those lost profits but the future award of 2.5 million dollars was based on a royalty for the trade secrets alone and so there is still left to be a portion of damage we have the 114 patent out here which has never been adjudicated a patent right acquired by two individuals after years of labor that they had that financially were unable to assert at the time of this prior case they had to pursue a course finding counsel that could take the case on a contingency they could only find tort lawyers to do it who pursued this theory and pressed it it was not dependent their theory of trial was never contingent on infringement or non-infringement of the 114 section 11 related purely to damages it's the basis why the judge crafted his equitable compulsory license that he did and folded in the 114 to try to wrap up the whole thing but the 9th circuit threw it all out so again neither the theory nor the damages were based on infringement or non-infringement of the 114 patent we have this patent right issued validly blood sweat and tears of two individuals that will be extinguished because of this where Braun to this day sells hundreds of millions of units a year thank you